**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-21601-CIV-WILLIAMS**

UNITED STATES OF AMERICA,

       Plaintiff,

  vs.

GENESIS II CHURCH OF HEALTH
 AND HEALING;
MARK GRENON;
JOSEPH GRENON;
JORDAN GRENON; and
JONATHAN GRENON,

       Defendants.

_____/

## ORDER ON PRELIMINARY INJUNCTION

  1. Plaintiff has filed a Complaint for Injunction against Genesis II Church of Health and Healing ("Genesis"), and individual defendants Mark Grenon, Joseph Grenon, Jordan Grenon, and Jonathan Grenon (collectively, "Defendants") pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 332(a), alleging that Defendants directly or indirectly:

    A. Violate 21 U.S.C. § 331(d), by introducing or delivering for introduction into interstate commerce new drugs, as defined in 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355 nor exempt from approval;

    B. Violate 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce drugs, as defined in 21 U.S.C. § 321(g), that are misbranded within the meaning of 21 U.S.C. § 352(a) and (f)(1); and

    C. Violate 21 U.S.C. § 331(k), by causing drugs to become misbranded within the meaning of 21 U.S.C. § 352(a) and (f)(1) while they are held for sale after shipment of one or more of their components in interstate commerce.

  2. This Court has jurisdiction over the subject matter of this case and over all persons and parties to this action under the FDCA, 21 U.S.C. § 332(a).

  3. The Complaint for injunction states a cause of action under FDCA, 21 U.S.C. § 301 *et seq.*

  4. Because the United States' motion is based on 21 U.S.C. § 332(a), which expressly authorizes injunctive relief to protect the public interest, no specific finding of irreparable harm is necessary, no showing of any inadequacy of other remedies at law is necessary and no balancing of interests of the parties is required prior to the issuance of a preliminary injunction in this case. To obtain a preliminary injunction, the United states must demonstrate a substantial likelihood that it will succeed on the merits of its claim, and some cognizable danger of recurrent violation. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984); *United States v. Livdahl*, 356 F. Supp. 2d 1289, 1290–91 (S.D. Fla. 2005); *United States v. BioAnue Labs, Inc.*, 2014 WL 3696662, at *5 (M.D. Ga. July 23, 2014); *United States v. S. Serra Cheese Co.*, 2015 WL 6156961, at *6 (E.D. Mich. Oct. 20, 2015).

5. The Court finds that United States has demonstrated a substantial likelihood of success on the merits that Defendants are violating various sections of the FDCA. Specifically, the Court finds that United States has demonstrated a substantial likelihood of success on the merits that Defendants are:

A. Violating 21 U.S.C. § 331(d), by introducing or delivering for introduction into interstate commerce new drugs, as defined in 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355 nor exempt from approval. In support of this finding, the United States has presented evidence showing that:

1. MMS is a "drug" as defined by 21 U.S.C. § 321(g). Defendants have posted content on their websites claiming that MMS is intended for curing, mitigating, treating, or preventing COVID-19, Alzheimer's, autism, brain cancer, HIV / AIDS, and multiple sclerosis. (DE 3-1 at Exs. 3-12, 14-16, 18-20.)

2. MMS is a "new drug" as defined in 21 U.S.C. § 321 (p)(1) and (p)(2). Affiant Dr. Arthur F. Simone (Senior Medical Advisor in the Office of Unapproved Drugs and Labeling Compliance at the Center for Drug Evaluation and Research at the FDA) explained that after conducting "comprehensive searches of the publicly available medical and scientific literatures for MMS and its alias," he found "that there are *no* published adequate and well-controlled studies demonstrating that MMS is GRASE for

its intended use. Because there are no adequate and well-controlled studies for the intended uses of MMS, qualified experts cannot come to a consensus of opinion concerning its safety and effectiveness for such uses." (DE 3-3 at ¶ 22.)

3. MMS has not been approved by the FDA. Dr. Simone explained that after conducting "diligent searches" on various databases to "determine whether any Defendant has sought approval for MMS and to determine whether MMS has been approved by the FDA," his searches "did not identify any NDA or ANDA for Defendants' MMS product. Because none of the Defendants sought FDA approval for MMS, and neither an NDA nor an ANDA for MMS has been approved by FDA, I conclude that the MMS, associated with any Defendant, is an unapproved new drug." (DE 3-3 at ¶¶ 32-35.)

4. Defendants have introduced MMS into interstate commerce. Affiant Tiffany Petty (Program Analyst in the Health Fraud Branch in the Office of Regulatory Affair's Division of Enforcement, FDA) explained that on March 27, 2020, she visited Defendants' website and "[u]sing an undercover credit card and a fictitious name, I placed an order for: one (1) bottle of MMS 2 oz. (Sodium Chlorite); one (1) bottle of MMS2 powder 2.5 oz; and one (1) pack of clear capsules." (DE 3-1 at ¶¶ 16-

4

 18.) Affiant Jason Humbert (Director of the Health Fraud Branch) explained that on March 30, 2020, he "traveled undercover" to the "mailbox in Ashburn, Virginia that is associated with the fictitious identity Petty used to purchase Defendants' MMS products. I collected the shipment with USPS Tracking number 9405511298370940883574 for order 28665 that was made by Petty. The package containing the product contained the return address of 2014 Garden Lane, Bradenton, Florida 34205." (DE 3-2 at ¶ 11.) Plaintiffs also provided screenshots of the online order and confirmation emails, as well as photographs of the package and its contents. (DE 3-1 at exs. 13, 17; DE 3-2 at ex. 2).

B.  Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce drugs, as defined in 21 U.S.C. § 321(g), that are misbranded within the meaning of 21 U.S.C. § 352(a) and (f)(1). In support of this finding, the United States has presented evidence showing that:

 1.  MMS is mislabeled because "it's labeling is false or misleading in any particular" under 21 U.S.C. § 352(a). Defendants have claimed that MMS is intended for curing, mitigating, treating, or preventing COVID-19, Alzheimer's, autism, brain cancer, HIV / AIDS, and multiple sclerosis. (DE 3-1 at exs. 3-12, 14-16, 18-

5

     20.) Dr. Simone explained that there are no adequate and well-controlled studies demonstrating that MMS can safely or effectively treat these diseases. (DE 3-3 at ¶ 22.)

 2. MMS is misbranded because its labeling does not include "adequate directions for use" as defined by 21 U.S.C. § 352(a), because it lacks "directions under which the layman can use a drug safely and for the purposes for which it is intended." Dr. Simone explained that "Defendants' drug is a prescription drug because it is intended for curing, mitigating, treating, or preventing coronavirus, and many other serious diseases. . . that require diagnosis and management by a physician. Specifically, medical expertise and special clinical testing are necessary to diagnose these serious disease. . . . Consequently, adequate directions under which a layman can safely use Defendants' MMS product to cure, mitigate, treat, or prevent coronavirus, or other serious diseases . . . cannot be written." (DE 3-3 at ¶ 37.)

C. Violating 21 U.S.C. § 331(k), by causing drugs to become misbranded within the meaning of 21 U.S.C. § 352(a) and (f)(1) while they are held for sale after shipment of one or more of their components in interstate commerce. In support of this finding, the United States has presented evidence showing that:

      1. MMS is "held for sale" because it is intended for purposes other than Defendants' personal consumption. *See United States v. US Stem Cell Clinic, LLC*, 403 F. Supp. 3d 1279 (S.D. Fla. 2019). The United States has introduced screenshots of Defendants' sales website demonstrating Defendants' intent to sell MMS to others. (DE 3-1 at ex. 13.)

6. The Court finds that the United States has shown a cognizable danger that Defendants will continue to violate the FDCA in the future unless a preliminary injunction is issued. In their written response to the FDA's April 8, 2020 cease and desist letter demanding corrective action regarding MMS distribution and mislabeling (DE 3-2 at ex. 8), Defendants state that "There will be NO corrective actions on our part," "You have no authority over us! . . . Never going to happen," and "We don't have to cease anything in regard to our Church Sacraments!" (DE 3-2 at ex. 10).[1]

7. The Court finds that the conditions for granting a preliminary injunction under 21 U.S.C. § 332(a) have been met.

After considering the foregoing, it is therefore, **ORDERED AND ADJUDGED** that:

1. The United States' motion for a preliminary injunction (DE 3) is **GRANTED.**

---

[1] The Government also submitted evidence demonstrating Defendants' open refusal to comply with the Court's April 17, 2020 Temporary Restraining Order (DE 3). For instance, on April 26, 2020, Defendants Mark and Joseph Grenon hosted a website broadcast / podcast and Mark Grenon stated, "[j]ust because the FDA submits a TRO and the DOJ . . . signs the order, it doesn't mean it has to be obeyed or even given attention." (DE 23 at ex. 4.)

2. Upon entry of this Order, Defendants and each and all of their directors, officers, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (hereinafter, "Associated Persons") who receive actual notice of this Order, shall not, during the pendency of this action, directly or indirectly, label, hold, and/or distribute any drug, including but not limited to MMS, that does not have an approved new drug application pursuant to 21 U.S.C. § 355(b) or abbreviated new drug application pursuant to 21 U.S.C. § 355(j), or an investigational new drug application in effect for its use pursuant to 21 U.S.C. § 355(i), or any drug that is misbranded within the meaning of 21 U.S.C. § 352.

3. Upon entry of this Order, Defendants and Associated Persons, shall not, directly or indirectly, violate 21 U.S.C. § 331(k) by causing any drug, including but not limited to MMS, to become misbranded within the meaning of 21 U.S.C. § 352(a) and/or (f)(1) after shipment of one or more of its components in interstate commerce.

4. Upon entry of this Order, Defendants and Associated Persons shall immediately refrain from disposing of or transferring any assets that may interfere with implementation of payment of restitution to consumers who purchased Defendants' drugs, should the Court ultimately order such restitution payments in its final judgment in this matter.

5. Upon entry of this Order, Defendants and Associated Persons are prohibited from destroying, discarding, altering, transferring or otherwise making unavailable

any document or record in electronic format or otherwise within their custody or control that are related to (a) MMS; (b) misbranded drugs; and/or (c) unapproved new drugs.

6. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendants' places of business and take any other measures necessary to monitor and ensure continuing compliance with the terms of this Order. During such inspections, FDA representatives shall be permitted to: have immediate access to buildings, including but not limited to 2014 Garden Ln, Bradenton, FL 34205-5274 (the "Facility"), equipment, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other promotional material therein; take photographs and make video recordings; take samples of Defendants' in-process or unfinished and finished products, containers, packaging material, labeling, and other promotional material; and examine and copy all records relating to the labeling, holding, and distribution of any and all drugs and their components. The inspections shall be permitted upon presentation of a copy of this Order and appropriate credentials. The inspection authority granted by this Order is separate and apart from, and in addition to, the authority to make inspections under the FDCA, 21 U.S.C. § 374.

7. Defendants shall bear the cost of any inspections, analytical work, and supervisory activities that FDA deems necessary to evaluate Defendants' compliance with any of the terms of this Order.

8. Defendants shall post a copy of this Order in a common area at the Facility and at any other location at which Defendants conduct business and shall ensure that the Order remains posted for as long as the Order remains in effect.

9. **IT IS FURTHER ORDERED** that the United States shall promptly provide notice of this action and this Order to Defendants by attempting service at last known email addresses and physical addresses. Pursuant Rule 65(c) of the Federal Rules of Civil Procedure, United States of America shall not be required to post security for the instant action.

**DONE AND ORDERED** in chambers in Miami, Florida, this 1st day of May, 2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE