# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 20-21601-CIV-WILLIAMS

UNITED STATES OF AMERICA,

<em>Plaintiff,</em>

<em>vs.</em>

GENESIS II CHURCH OF HEALTH
   AND HEALING;
MARK GRENON;
JOSEPH GRENON;
JORDAN GRENON; and
JONATHAN GRENON,

<em>Defendants.</em>

_____

## UNITED STATES' MOTION FOR FINAL DEFAULT JUDGMENT AGAINST GENESIS II CHURCH OF HEALTH AND HEALING, JONATHAN GRENON, AND JORDAN GRENON

Plaintiff, the United States of America, pursuant to this Court's Order dated June 1, 2020 (D.E. 47), respectfully moves under Federal Rule of Civil Procedure 55(b) for a final default judgment against Jonathan Grenon and Jordan Grenon (the "U.S.-based Defendants") and Genesis II Church of Health and Healing ("Genesis II") (collectively, the "Defendants").

## I. INTRODUCTION

The unrebutted facts supporting entry of the attached proposed final order of permanent injunction are set forth in detail in the Complaint filed on April 16, 2020. (D.E. 1). In the Complaint, the government sought a permanent injunction against Defendants under the Federal Food, Drug, and Cosmetic Act (the "FDCA" or the "Act"), 21 U.S.C. § 332(a), to halt distribution by Defendants of a misbranded and unapproved new drug that they claim cures, mitigates, treats,

or prevents Coronavirus, which includes the novel Coronavirus disease 2019 ("COVID-19"), and many other serious diseases. Because the Defendants failed to respond and the Clerk of the Court entered default against them, the well-pled facts of the Complaint are deemed admitted, and final default judgment is appropriate because Defendants' liability under the Act is established.

## II.    PROCEDURAL HISTORY

On April 27, 2020, summons were issued for all Defendants. (D.E. 17). On April 28, 2020, the summons and Complaint were properly served on Genesis II and Jonathan Grenon (D.E. 19-10, 19-11). On April 29, 2020, the summons and Complaint were properly served on Jordan Grenon. (D.E. 19-14). Pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, the applicable time for Genesis II and Jonathan Grenon to file a pleading in response to the Complaint expired on May 19, 2020, and on May 20, 2020, for Jordan Grenon. Accordingly, on May 29, 2020, the Clerk of the Court issued a default against the Defendants for failure to appear, answer, or otherwise plead to the Complaint. (D.E. 46).

## III.    STANDARD OF REVIEW

Fed. R. Civ. P. 55(a) authorizes the Clerk of the Court to enter a default against a defendant who has not filed a timely answer. After entry of default, Fed. R. Civ. P. 55(b)(2) authorizes this Court to enter a final default judgment when the plaintiff's claim is not for a sum certain. By virtue of the default, "[t]he well-pleaded allegations made in the Complaint (D.E. 1) are deemed to have been admitted." *Microsoft Corp. v. Tech HQ, Inc.*, No. 16-62633-CIV, 2018 WL 941721, at *1 (S.D. Fla. Feb. 2, 2018) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-78 (11th Cir. 2005)). A final default judgment, including a permanent injunction, is appropriate if the plaintiff establishes that there is a sufficient basis in the pleadings for judgment to be entered. *See Chanel, Inc. v. Beausmart.com*, 240 F.Supp. 1283, 1288-89 (S.D. Fla. 2016); *see also Buchanan*

*v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default…." (alterations added)). For example, a default judgment cannot rest on a complaint that fails to state a claim. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co., Ltd. V. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## IV.  FACTS DEEMED ADMITTED

Genesis II is an entity based in the State of Florida that distributes a product called Miracle Mineral Solution, also referred to as "MMS." Genesis II operates a website, https://newg2sacraments.org ("Sales Website"), which offered MMS for sale in the United States. On its website, Genesis II describes itself as "a non-religious church … focus[ing] on 'restoring health' to the world" that "was formed for the purpose of serving mankind and not for the purpose of worship." *Our Church,* GENESIS II CHURCH OF HEALTH & HEALING (OFFICIAL) – MMS, https://genesis2church.ch/our-church (last visited Apr. 12, 2020). (D.E. 1 ¶ 4). Genesis II operates another website, https://g2churchnews.org ("News Website"), that contains claims that MMS is intended to cure, mitigate, treat, or prevent Coronavirus, which includes COVID-19, and links to testimonials claiming that MMS cures a litany of other diseases, including, among others, Alzheimer's, autism, brain cancer, HIV/AIDS, and multiple sclerosis. *Id*. The Sales Website is available through links from Defendants' websites genesis2church.ch and g2voice.is, both of which contain or link to claims regarding MMS's use to cure diseases.[1] Genesis II is located at

---

[1] Since the filing of the Complaint, Defendants have altered the Sales Website such that MMS can no longer be purchased directly from the website. Instead, the Sales Website now directs consumers to send questions to an email address provided on the site. (D.E. 23-1, at ¶¶ 5-6). Questions concerning the availability of MMS sent to the email address provided on the site generate a response from Defendant Jordan Grenon, directing consumers to alternate sources for MMS. (*Id*. ¶ 7). As set forth in the United States' filings in support of its motion to show cause,

2014 Garden Lane, Bradenton, Florida, and does business within the jurisdiction of this Court. (*Id.*)

Defendant Jordan Grenon holds the title of "Bishop" at Genesis II. Jordan Grenon is responsible for Genesis II's operations including, but not limited to, labeling, holding, and/or distributing MMS. Jordan Grenon performs his duties at 2014 Garden Lane, Bradenton, Florida. (D.E. 1 ¶ 7).

Defendant Jonathan Grenon holds the title of "Bishop" at Genesis II. Jonathan Grenon is responsible for Genesis II's operations including, but not limited to, labeling, holding, and/or distributing MMS. Jonathan Grenon performs his duties at 2014 Garden Lane, Bradenton, Florida. (D.E. 1 ¶ 8).

According to MMS's labeling, including but not limited to materials and links on Defendants' News Website and on Defendants' https://g2voice.is website ("Radio Website"), MMS is intended to cure, mitigate, treat, or prevent Coronavirus, which includes COVID-19, along with many other diseases. (D.E. 1 ¶ 13).

Defendants' News Website contains claims that MMS cures, mitigates, or treats Coronavirus. For example, the News Website states:

- "**G2Church Sacramental Dosing for Coronavirus!**

  **For Adults**: 6 drops activated MMS in 4 ounces of water every two hours 5 times first day, Repeat 2nd day. If all symptoms are gone then continue with 3 drops and [sic] hour for 8 hours for another 3 days!

  **For Small Children:** same a [sic] above but with only 3 drops. 1 drop instead of 3 drops of the 3 days after the first two days of strong dosing!

  **NOTE:** This should wipe it out this flu-like virus that many are being scared with its presence in this world!

---

the Government, using an undercover identity, purchased Genesis II MMS through one such source, after the Court entered the preliminary injunction. (D.E. 39, at 5-8; D.E. 39-1).

> For Sacramental Guidance and products please contact us at: support@genesis2church.is"

- "The Coronavirus is curable!"

*G2Voice Broadcast # 182: The Coronavirus Is Curable! Do You Believe It? You Better!*, G2CHURCHNEWS (Mar. 3, 2020), https://g2churchnews.org/577-gvoice-182.  (D.E. 1 ¶ 14).

In a video available on Defendants' Radio Website, Defendant Mark Grenon makes the following claims concerning the use of MMS to cure, mitigate, or treat coronavirus:

- "The Coronavirus is curable, do you believe it?  You better . . . "

- "Every week I am putting in the G2Sacramental dosing for Coronavirus, why . . . we have a family on it, we have a couple of other people . . . 6 drops MMS activated 4oz of water every two hours four or five times the first day, it should, it might even kick it out the first day, but depends on how long you've had it, if it's in your lungs, do it the second day again, then I'd go to three drops eight hours a day for three or four days, then just to keep going, kick it out of you. Small children, we can cut everything in half, three drops every two hours versus a couple days, three hours then a drop really, not three."

*Id*. (D.E. 1 ¶ 15). In the same video, Defendant Mark Grenon states: "The Coronavirus is curable, you believe that? You better. . . it's wicked good stuff Joe." Defendant Joseph Grenon then replies: "MMS will kill it." (D.E. 1 ¶ 16).

COVID-19 is a disease caused by a novel Coronavirus named "severe adult respiratory syndrome coronavirus 2" (SARS-CoV-2) that was first clearly identified in December 2019. Reported illnesses for confirmed COVID-19 cases have ranged from mild to severe, many resulting in death. The Centers for Disease Control and Prevention has stated that the COVID-19 pandemic "poses a serious public health risk." https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (visited March 26, 2020). (D.E. 1 ¶ 17).  As the World Health Organization has explained, "there is no evidence that current medicine can prevent or cure the disease." World Health Organization, *Q&A on Coronaviruses (COVID-19)*, (Apr. 8, 2020),

https//www.who.int/new-room/q-a-detail/q-a-coronaviruses; *see also* U.S. Centers for Disease Control and Prevention, *Therapeutic Options for COVID-19 Patients* (Apr. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/therapeutic-options.html ("There are no drugs or other therapeutics approved by [FDA] to prevent or treat COVID-19. Current clinical management includes infection prevention and control measures and supportive care …"). (D.E. 1 ¶ 18).

On January 31, 2020, the Secretary of Health and Human Services declared a public health emergency under 42 U.S.C. § 247d for the United States in response to SARS-CoV-2. (D.E. 1 ¶ 19). On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak was properly characterized as a worldwide pandemic. (D.E. 1 ¶ 20). On March 13, 2020, the President of the United States exercised his authority under the National Emergencies Act (50 U.S.C. § 1601 *et seq.*) and officially declared that the COVID-19 outbreak in the United States constituted a national emergency. (D.E. 1 ¶ 21).

On April 8, 2020, FDA, (jointly with the Federal Trade Commission), issued a Warning Letter to Defendants, telling them that they were violating the FDCA by distributing unapproved new drugs and misbranded drugs in interstate commerce. (D.E. 1 ¶ 43). The Warning Letter requested that Defendants respond within 48 hours by email and describe the specific steps they had taken to correct the violations described in the letter. *Id*. FDA further warned Defendants that failure to immediately correct their violative conduct may result in legal action, including an injunction. *Id*. The Warning Letter also stated: "If you cannot complete corrective action within 48 hours, state the reason for the delay and the time within which you will complete the corrections. If you believe that your products are not in violation of the [FDCA], include your reasoning and any supporting information for our consideration." *Id*.

On April 9, 2020, the Warning Letter was posted to Defendants' News Website, along with Genesis II's commentary. Specifically, Defendants claimed that FDA did not have jurisdiction over their activities or products and that they would fight the Warning Letter and to continue to distribute MMS. (D.E. 1 ¶ 44). FDA also received a written response to the Warning Letter from Genesis II on April 10, 2020, which made clear that Genesis II had no intention of taking corrective action, stating: "**We can say cure, heal and treat as a Free Church. Don't need you [sic] approval or authorization for a Church Sacrament.**" (emphasis in original.) (D.E. 1 ¶ 45). Genesis II's letter to FDA, signed by Defendant Mark Grenon, further stated that: "**There will be NO corrective actions on our part ... You have no authority over us! ... Never going to happen.**" (emphasis in original). *See* https://g2churchnews.org/584-fda-and-ftc-attack. *Id*.

V.     **SUFFICIENT BASIS TO ENTER FINAL JUDGMENT**

       A.     **Defendants Unlawfully Distribute Unapproved New Drugs**

The FDCA prohibits the introduction or delivery for introduction into interstate commerce, and the causing thereof, of a "new drug" that is neither approved by FDA nor exempt from approval. 21 U.S.C. §§ 331(d) and 355(a). Specifically, a "new drug" may not be introduced or delivered for introduction into interstate commerce unless FDA has approved a new drug application ("NDA") or an abbreviated new drug application ("ANDA") with respect to such drug, or such drug is exempt from approval pursuant to an effective investigational new drug application ("IND"). 21 U.S.C. §§ 331(d) and 355(a), (b), (i), and (j). Under the FDCA, a "drug" includes "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man." 21 U.S.C. § 321(g)(1)(B). The intended use of a product may be determined from any relevant source, including labeling. *See* 21 C.F.R. § 201.128. *See United States v. Livdahl*, 459 F.

Supp. 2d, 1255, 1260 (S.D. Fla. 2005); *United States v. An Article ... Sudden Change*, 409 F.2d 734, 739 (2d Cir. 1969).

Under the Act, a "label" is defined as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). "Labeling" is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). If information regarding a drug is provided as part of an integrated distribution system and explains the uses of the drug, that matter "accompanies" the drug and is "labeling" under the Act; "[n]o physical attachment one to another is necessary." *Kordel v. United States*, 335 U.S. 345, 350 (1948). MMS is a drug within the meaning of the Act because it is intended for use in the cure, mitigation, treatment, or prevention of disease in man.

Under the Act, a "new drug" is "[a]ny drug . . . the composition of which is such that" (1) "such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, ..." or (2) "such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions." 21 U.S.C. § 321(p)(1) and (2).

For a new drug to be "generally recognized as safe and effective" ("GRASE") within the meaning of 21 U.S.C. § 321(p)(1), three conditions must be satisfied. First, there must be substantial evidence of its effectiveness. The Act defines "substantial evidence" as "evidence consisting of adequate and well-controlled investigations, including clinical investigations . . . on the basis of which it could fairly and responsibly be concluded by ... [qualified] experts that the

drug will have the effect it purports or is represented to have ... " 21 U.S.C. § 355(d). Second, the investigations must be published in the scientific literature so that they are made generally available to the community of qualified experts and thereby subject to peer evaluation, criticism, and review. *Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 652 (1973). Third, there must be a consensus among the experts, based on those published investigations, that the product is safe and effective under the conditions prescribed, recommended, or suggested in its labeling. *Id.*

FDA conducted comprehensive searches of the publicly-available medical and scientific literature for MMS, including searching the following aliases under which Defendants sell MMS: Sacramental Cleansing Water, Miracle Mineral Solution, MMS1, G2Church Sacramental, G2Church Sacrament, and as part of their "g2kit2," and determined that there are no published, adequate and well-controlled studies demonstrating that Defendants' MMS is safe and effective for use under the conditions prescribed, recommended, or suggested in its labeling. Because there are no published adequate and well-controlled studies for the intended uses of MMS to cure, mitigate, treat, or prevent coronavirus, or any other disease, qualified experts cannot have a consensus of opinion concerning its effectiveness for such uses. (D.E. 1 ¶ 24). Therefore, Defendants' MMS is not GRASE and is a new drug under 21 U.S.C. § 321(p)(1). *See United States v. Loran Med. Sys., Inc.*, 25 F. Supp. 2d 1082, 1087 (C.D. Cal. 1997) (citing *United States v. Articles of Drug (Promise Toothpaste)*, 826 F.2d 564, 569 (7th Cir. 1987)).

Defendants' MMS is also a "new drug" within the meaning of 21 U.S.C. § 321(p)(2). COVID-19 is an infectious disease caused by a newly discovered coronavirus, SARS-CoV-2. The "new virus and disease were unknown before the outbreak began in Wuhan, China, in December 2019." *See* https://www.who.int/news-room/q-a-detail/q-a-coronaviruses. (D.E. 1 ¶ 25).

Therefore, as a matter of law, Defendants' MMS cannot have been marketed as a treatment or cure for this disease for a material time or to a material extent and, accordingly, is a "new drug."

After searching its records for NDA, ANDA, and IND submissions by Defendants, FDA determined that there are no approved NDAs or ANDAs and no INDs in effect for MMS. (D.E. 1 ¶ 26). Therefore, MMS is an unapproved new drug within the meaning of 21 U.S.C. § 355(a).

## B.     Defendants Distribute Unapproved New Drugs in Interstate Commerce

The Act's definition of "interstate commerce" includes commerce between any state and any place outside of it. 21 U.S.C. § 321(b)(1). On or about March 27, 2020, Defendants shipped MMS from Florida to Virginia (D.E. 1 ¶ 28), which constitutes distribution in "interstate commerce" within the meaning of 21 U.S.C. § 321(b)(1). Therefore, Defendants violated 21 U.S.C. § 331(d) by introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce, of unapproved new drugs.[2]

## C.     Defendants Unlawfully Distribute Misbranded Drugs in Interstate Commerce

Under the FDCA, a drug is deemed misbranded "[i]f its labeling is false or misleading in any particular." *See* 21 U.S.C. § 352(a). Misbranding under 21 U.S.C. § 352(a)(1) requires proof of two elements: (1) a representation in the labeling of the product; and (2) the false or misleading nature of that representation. *United States v. Torigian Labs.*, Inc., 577 F. Supp. 1514, 1525 (E.D.N.Y. 1984), *aff'd,* 754 F.2d 373 (2d Cir. 1984). In determining whether labeling is misleading, not only are representations made or suggested in the labeling taken into account, but also the extent to which the labeling fails to reveal material facts. 21 U.S.C. § 321(n). A curative claim that has little or no expert scientific support is a material fact which, if not revealed, causes a product

---

[2] As noted above in footnote 1, *supra*, the government also executed an undercover purchase of Genesis II's MMS after the Court entered the preliminary injunction. That product was shipped from Tennessee to Virginia. (D.E. 39-1, at ¶ 9).

to be misbranded. H.R. REP. No. 75-2139 (1938); *see generally United States v. Hiland*, 909 F.2d 1114 (8th Cir. 1990) (upholding convictions for false and misleading labeling where defendants made curative claims in labeling despite knowledge that no testing had been done to establish safety or efficacy for such use).

Demonstrating that a labeling claim is either false or misleading is sufficient to establish misbranding under the Act. *United States v. One Device … The Ellis Micro-Dynameter*, 224 F. Supp. 265, 268 (E.D. Pa. 1963). Only one false or misleading claim need be proven to establish misbranding under 21 U.S.C. § 352(a). *United States v. One Device … Colonic Irrigator*, 160 F.2d 194, 200 (10th Cir. 1947); *Sene X Eleemosynary*, 479 F. Supp. at 980. The labeling is to be evaluated from the point of view of those to whom the literature is addressed, namely "prospective purchasers and actual customers … who cannot be presumed to have special expertness or to be unduly cautious, but who are more likely than not to be persons who are pathetically eager to find some simple cure-all for the diseases with which they are afflicted …." *V.E. Irons Inc. v. United States*, 244 F.2d 34, 39–40 (1st Cir. 1957). As the WHO and CDC have recognized, there is no evidence that current medicine can prevent or cure COVID-19, and no FDA-approved drugs exist to prevent or treat the disease. *See supra* at 6. Because there is no known cure for COVID-19, Defendants' claims are false or misleading.

Defendants' labeling for MMS, including its websites, contains numerous claims that are false and misleading, including that MMS can safely and effectively treat Coronavirus, which includes COVID-19, and a litany of other serious diseases. The claims in Defendants' labeling lack expert scientific support. No published, adequate, and well-controlled studies demonstrate that MMS is safe and effective in treating Coronavirus or *any* disease, including the litany of diseases

identified in the labeling.  As a result, the labeling for Defendants' MMS is false and misleading, and therefore, MMS is a misbranded drug under 21 U.S.C. § 352(a).

### D.      Defendants Distribute Drugs that Fail to Bear Adequate Directions for Use

Under the FDCA, a drug is misbranded within the meaning of 21 U.S.C. § 352(f)(1) if its labeling fails to bear "adequate directions for use" and it is not exempt from this requirement. FDA has defined "adequate directions for use" as "directions under which the layman can use a drug safely and for the purposes for which it is intended." 21 C.F.R. § 201.5; *United States v. Articles of Drug ... Rucker*, 625 F.2d 665, 671–75 (5th Cir. 1980). Moreover, if it is a prescription drug, it is impossible as a matter of law to create adequate directions for lay use. *See* 21 U.S.C. § 353(b)(1)(A); *see also United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1323–25 (D.C. Cir. 2014); *United States v. Evers*, 643 F.2d 1043, 1050–51 (5th Cir. 1981). A prescription drug is "[a] drug intended for use by man which because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1)(A).

Defendants' MMS is a prescription drug because it is intended for curing, mitigating, treating, or preventing coronavirus, which includes COVID-19, a disease that requires diagnosis and management by a physician. Accordingly, there are no adequate directions under which a layperson can safely use this drug, because it is not safe for use except under the supervision of a physician. *See, e.g.,* 21 U.S.C. § 353(b)(1)(A); *Regenerative Scis.*, 741 F.3d at 1323–25. Because Defendants' drug labeling does not bear adequate directions for use, MMS is misbranded under 21 U.S.C. § 352(f)(1), unless it qualifies for an exemption from the adequate directions for use requirement. *Articles of Drug ... Rucker*, 625 F.2d at 675; *United States v. Premo Pharm. Labs.,*

12

*Inc.*, 511 F. Supp. 958, 977 n.23 (D.N.J. 1981) ("A drug is misbranded if it is a prescription drug that is an unapproved new drug, because a prescription drug cannot bear the adequate directions for use required by statute ... and the lack of an approved NDA means that there is no FDA exemption from the adequate directions for use requirement.") (citations omitted).

FDA has promulgated regulations establishing exemptions from the adequate directions for use requirement in 21 U.S.C. § 352(f)(1), but each exemption requires that the drug bear the labeling approved by FDA in an NDA. 21 C.F.R. §§ 201.100, 201.115. Because MMS is not the subject of an approved NDA or ANDA, Defendants' MMS does not qualify for any exemption from the requirement that its labeling bear adequate directions for use. *See* 21 C.F.R. §§ 201.100(c)(2), 201.115.

### E. Defendants Distribute Their Misbranded Drugs in Interstate Commerce

Defendants shipped MMS from Florida to Virginia (D.E. 1 ¶ 39), which constitutes a distribution in interstate commerce within the meaning of 21 U.S.C. § 321(b)(1). Defendants violate 21 US.C. § 331(a) by introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce, drugs that are misbranded within the meaning of 21 U.S.C. § 352(a) and 352(f)(1). Under 21 U.S.C. § 379a, "[i]n action to enforce the requirements of this Act respecting a ... drug ... the connection with interstate commerce required for jurisdiction in such action shall be presumed to exist." Upon information and belief, Defendants receive MMS components or the finished MMS product from outside of Florida.

### F. Defendants Cause the Misbranding of Drugs While Held for Sale After Shipment of the Drugs or Their Components in Interstate Commerce

The Act prohibits doing an act that causes a drug to become misbranded while such product is held for sale after its shipment, or shipment of one or more of its components, in interstate

commerce. 21 U.S.C. § 331(k). A product is "held for sale" under section 331(k) if it is used for any purpose other than personal consumption. *United States v. Evers*, 643 F.2d 1043, 1050 (5th Cir. 1981); *Torigian Labs.* 577 F. Supp. at 1521; *United States v. Articles of Drug … Hydralazine HCL*, 568 F. Supp. 29, 31 (D.N.J. 1983); *see also United States v. Diapulse Corp. of Am.*, 514 F.2d 1097, 1098 (2d Cir. 1975); *United States v. Sullivan*, 332 U.S. 689, 697 (1948) (21 USC § 331(k) intended to "extend [FDCA's] coverage to every article that had gone through interstate commerce until it finally reached the ultimate consumer"). "[I]n action to enforce the requirements of this Act respecting a . . . drug . . . the connection with interstate commerce required for jurisdiction in such action shall be presumed to exist." 21 U.S.C. § 379a. Defendants' MMS, therefore, is "held for sale … after shipment in interstate commerce" within the meaning of 21 U.S.C. § 331(k), because Defendants are not the ultimate consumers of the product. By labeling MMS with claims that it cures, mitigates, treats, or prevents coronavirus, which includes COVID-19, and a litany of other serious diseases, Defendants caused MMS to become a misbranded drug within the meaning of 21 U.S.C. § 352(a) (false or misleading labeling) and 352(f)(1) (failure to bear adequate directions for use), while it was held for sale after shipment of one or more of its components in interstate commerce, in violation of 21 U.S.C. § 331(k).

###### G.    A Permanent Injunction is Appropriate

Unless permanently enjoined by this Court, Defendants will continue to violate the Act in the manner set forth above. Accordingly, entry of a permanent injunction is appropriate in this case to protect the public health. Congress enacted the FDCA to protect the American public from "deleterious, adulterated, and misbranded articles" reaching consumers through interstate commerce. *United States v. Walsh*, 331 U.S. 432, 434 (1947). Indeed, Congress sought to protect the public from those "products not proven to be safe and effective for their alleged uses[.]" *United*

14

*States v. Diapulse Corp. of Am.*, 457 F.2d 25, 27–28 (2d Cir. 1972). To that end, Congress empowered federal courts to restrain and enjoin entities and individuals from distributing unapproved new drugs and misbranded drugs and causing drugs to become misbranded after shipment of components or finished product in interstate commerce. *See* 21 U.S.C. § 332(a) (authorizing injunctions to restrain violations of 21 U.S.C. § 331(a), (d), and (k)).

Because the FDCA specifically authorizes injunctive relief to enforce Congressional policy, courts use a different injunction standard than is used in private litigation. Specifically, the Supreme Court has held that, unlike a private plaintiff, to obtain an injunction authorized by statute, the government need not show that irreparable harm will result. *United States v. City and Cty. of San Francisco*, 310 U.S. 16, 31 (1940). This is because when it enacted the FDCA, Congress made "an implied finding that violations will harm the public and ought, if necessary, be restrained." *Diapulse,* 457 F.2d at 28. The Eleventh Circuit Court of Appeals agrees: "Where … an injunction is authorized by statute and the statutory conditions are satisfied … the usual prerequisite of irreparable injury need not be established and the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury before obtaining an injunction." *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (quoting *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969)). Instead, the government must show only that the defendants have violated the statute and there is some "cognizable danger of recurrent violations" to obtain a statutory injunction. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *United States v. US Stem Cell Clinic, LLC*, 403 F. Supp. 3d 1279, 1300 (S.D. Fla. 2019) ("FDA need not show that it would suffer irreparable harm if the injunction were not granted."); *United States v. Sene X Eleemosynary Corp.*, 479 F. Supp. 970, 981 (S.D. Fla. 1979) (irreparable harm is presumed).

As this Court has previously observed, "[p]ast behavior is a reliable predictor of future behavior, and injunctive relief is particularly appropriate where a defendant has persisted in violating the law, despite repeated warnings." *United States v. Flu Fighter Corp.*, No-0561940-CIV, 2009 WL 10668958, at *7 (S.D. Fla. Feb. 11, 2009); *see also United States v. Lit Drug Co.*, 333 F. Supp. 990, 999 (D.N.J. 1971) ("The law is also clear that a court must effectively safeguard the public interest against the abuses inflicted by a willful, persistent violator of regulatory legislation who has not shown good faith in compliance."). Here, not only did Defendants persist in their unlawful conduct after being warned by authorities, they explicitly and unambiguously declared their intention to persist in such violations even after the Court entered a temporary restraining order and preliminary injunction to halt such activity. Defendants continue to cause the distribution of misbranded and unapproved MMS in violation of the Court's preliminary injunction order. (D.E. 39, at 5–8; D.E. 39-1). There is little doubt, therefore, that there is a "cognizable danger of recurrent violation" necessary for the issuance of the injunction.

The Court should enter a permanent injunction restraining and enjoining Genesis II, Jordan Grenon, Jonathan Grenon, and each and all of their directors, officers, agents, employees, representatives, attorneys, successors, and assigns, and all persons in active concert or participation with any of them ("Associated Persons"), pursuant to 21 U.S.C. § 332(a) and the inherent equity of the Court, from directly or indirectly doing or causing the following acts:

        A.      Violating 21 U.S.C. § 331(d), by introducing or delivering for introduction into interstate commerce new drugs, as defined in 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355 nor exempt from approval;

       B.      Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce drugs, as defined in 21 U.S.C. § 321(g), that are misbranded within the meaning of 21 U.S.C. § 352(a) and/or 352(f)(1); and

       C.      Violating 21 U.S.C. § 331(k), by causing drugs to become misbranded within the meaning of 21 U.S.C. § 352(a) and/or 352(f)(1) while they are held for sale after shipment of one or more of their components in interstate commerce.

## VI.   CONCLUSION

In light of the foregoing, the United States respectfully requests that the Court enter a default judgment enjoining Genesis II and the U.S.-based Defendants consistent with the attached proposed order on permanent injunction, as the admitted facts demonstrate a well-pleaded basis for the relief requested. *See Chanel*, 240 F. Supp. at 1288–89.

Dated: June 15, 2020

                         Respectfully submitted,

JOSEPH H. HUNT               ARIANA FAJARDO ORSHAN
Assistant Attorney General         United States Attorney
U.S. Department of Justice

GUSTAV W. EYLER
Director
Consumer Protection Branch

*Ross S. Goldstein*                    *Matthew J. Feeley*
ROSS S. GOLDSTEIN           MATTHEW J. FEELEY
Court ID No. A5502651         Florida Bar No. 12908
Senior Litigation Counsel        Assistant United States Attorney

Ross.Goldstein@usdoj.gov       99 N.E. 4th Street, Suite 300
202-353-4218 (office)          Miami, FL 33132
202-514-8742 (fax)

                              Matthew.Feeley@usdoj.gov
                              305-961-9235 (office)
*David A. Frank*                   305-530-7139 (fax)
DAVID A. FRANK
Court ID No. A5500486

Senior Litigation Counsel

U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044

David.Frank@usdoj.gov
(202) 307-0061 (office)
(202) 514-8742 (fax)

*Counsel for the United States of America*

OF COUNSEL:

ROBERT P. CHARROW
General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
U.S. Department of Health and Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation

JOSHUA A. DAVENPORT
Associate Chief Counsel for Enforcement
U.S. Department of Health and Human Services
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, electronic mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:     *s/ Matthew J. Feeley*
         Matthew J. Feeley
         Assistant United States Attorney

## SERVICE LIST
United States of America
vs.
GENESIS II CHURCH OF HEALTH AND HEALING;
MARK GRENON;
JOSEPH GRENON;
JORDAN GRENON; and
JONATHAN GRENON,
CASE NO. 20-21601-CIV-WILLIAMS
United States District Court Southern District of Florida

| | |
|---|---|
| **ROSS S. GOLDSTEIN**<br>Court ID No. A5502651<br>Senior Litigation Counsel<br>Ross.Goldstein@usdoj.gov<br>202-353-4218 (office)<br>202-514-8742 (fax)<br><br>**DAVID A. FRANK**<br>Court ID No. A5500486<br>Senior Litigation Counsel<br>U.S. Department of Justice<br>Consumer Protection Branch<br>P.O. Box 386<br>Washington, D.C. 20044<br>David.Frank@usdoj.gov<br>(202) 307-0061 (office)<br>(202) 514-8742 (fax) | **GENESIS II CHURCH OF HEALTH AND HEALING**<br>contact@genesis2church.is<br>2014 Garden Ln.<br>Bradenton, FL 34205<br><br>**MARK GRENON**<br>mark@genesis2church.is<br><br>**JOSEPH GRENON**<br>joseph@genesis2church.is<br><br>**JORDAN GRENON**<br>jordan@genesis2church.is<br>6210 35th Avenue West<br>Bradenton, FL 34209 |

**MATTHEW J. FEELEY**
Florida Bar No. 12908
Assistant United States Attorney
99 N.E. 4th Street, Suite 300
Miami, FL 33132
Matthew.Feeley@usdoj.gov
305-961-9235 (office)
305-530-7139 (fax)

*Counsel for United States of America*

**JONATHAN GRENON**
jonathan@genesis2church.is
2014 Garden Ln.
Bradenton, FL 34205

*Defendants*